JOHNSON *v.* CHARLES' ESTATE.

1. EXECUTORS AND ADMINISTRATORS—CLAIM FOR SERVICES—ACCEPT-
   ANCE OF CHECK "IN FULL"—DIRECTED VERDICT.
   Where claimant against an estate had many times signed
   receipts acknowledging payment "in full" to date for
   services, and was therefore familiar with the use of such
   language, her denial that she accepted a final check as
   "in full" for all services to date, although it so recited,
   *held,* to raise no issue for the jury and the trial court
   properly directed a verdict against her.

2. SAME—APPEAL AND ERROR—WITNESSES.
   Nor was the rejection of certain testimony of claimant
   on the ground that it was equally within the knowledge
   of deceased prejudicial, where, even if admitted, it would
   not have entitled her to go to the jury on the question
   as to whether she had accepted the check in full for her
   services.

Error to Van Buren; Des Voignes (L. Burget), J.
Submitted January 3, 1922. (Docket No. 12.) De-
cided March 30, 1922.

Ella Johnson presented a claim against the estate
of William S. Charles, deceased, for services rendered.
The claim was disallowed by the commissioners, and
claimant appealed to the circuit court. Judgment for
defendant on a directed verdict. Claimant brings
error. Affirmed.

*Thomas J. Cavanaugh,* for appellant.

*L. J. Lewis* and *David Anderson,* for appellee.

SHARPE, J. William S. Charles was a prosperous
farmer in Van Buren county. Some time prior to 1893,

he and his wife had separated and in that year the claimant, an unmarried woman 26 years of age, entered his home on the farm as a housekeeper.    Her work was in every way satisfactory.    In 1910, they moved into a residence which Mr. Charles had purchased in the hamlet of McDonald, a few miles from the farm. He was then well along in years and it appears from the proofs that the claimant gave him and his home such attention as would be given by a daughter or near relative.    About the 1st of August, 1919, Stewart Barker, a grandson who was visiting his grandfather, asked and was granted permission to invite his fiancee and her mother to visit him.    They arrived quite late in the evening.    There is a conflict in the testimony concerning it, but it appears that the claimant was put out over their visit, declined to serve them with meals, and that unkind words passed between her and Mr. Charles over her conduct.    Stewart was married at Evanston on August 2d.    He soon after returned and on the evening of August 5th, as he sat on the porch with his mother and Dell Wilson, a cousin of claimant, he was called in by his grandfather and requested to get the latter's check book and write a check for $500 to claimant.    She and the deceased had been in conference for some time immediately prior thereto. The check was written and the deceased before signing it added the words "in full" thereto and delivered it to claimant, asking "Are you satisfied?" to which she responded "Yes."    Both Stewart and his mother testified to what there occurred.    Wilson was not called as a witness.    Claimant cashed the check and soon after left the home of deceased.    She made no claim against him during his lifetime.    After his death, which occurred January 28, 1920, claimant presented a claim against his estate for $10,500, for services rendered between April, 1891, and August, 1919.    It was disallowed by the commissioners on claims and an appeal

taken to the circuit court. A verdict was there directed for the estate, which the claimant here reviews by writ of error. The assignments relate to the direction of the verdict and certain rulings on the admission of testimony.

Twenty-one receipts, most of them in the handwriting of and all signed by claimant, were found in a box belonging to the deceased in the vault of a bank at which he did business. These receipts, bearing dates beginning in 1908 and ending in 1915, acknowledged payment of amounts varying from $12 to $48 as "in full to balance our account up to this date." Neither the dates nor the amounts enable us to determine the weekly or monthly compensation claimant was receiving. She offered proof that the deceased, in appreciation of the services rendered by her, had expressed an intention of providing for her future. To one witness, to whom he had talked after purchasing the home in McDonald, he had said:

" 'This will make us a nice home here; that is no fit place across the street for us but we bought this' or 'I bought this with the intention of making this our home and make Miss Johnson a home, if I pass out.' "

To another he had stated that "she would do more for me today than any one of my children," and to others that her work was satisfactory. After she left his home, he said to Ranseler J. Balfour: "There is my ex-housekeeper." "She made a d——n fool of herself." "I had her nicely fixed if she hadn't"— "I had provided $200 a year" "for her lifetime" and "that house that she is occupying."

That claimant rendered valuable service for Mr. Charles and that he fully appreciated it is clearly established by the record. But whatever his intentions may have been as to providing for her future, it is apparent that the trouble which arose in July and

August, 1919, caused him to change his mind. There is no evidence of an express contract. A contract would doubtless be implied as the relations of the parties were not such as to justify a finding that the services rendered were to be gratuitous. It is apparent from the receipts written and signed by claimant that up to 1915 frequent settlements were had. We are persuaded that the claimant accepted the $500 in full of all claims she then had against the deceased. While she denied that she accepted it as "in full," she was familiar with the use of similar language in receipts, having used it in those prepared by her, and her denial we think raised no issue of fact to be submitted to the jury.

Rejection of Testimony. Stewart Barker testified that at one time at the breakfast table he had heard claimant call Mr. Charles a fool. In rebuttal, claimant was asked whether she had done so, and an objection that the fact was equally within the knowledge of the deceased was sustained. For the same reason claimant was not permitted to testify as to whether she said she was satisfied at the time she received the $500 check. We are impressed that had claimant been permitted to answer and had her answers been a denial of the statements attributed to her, such denials would not have entitled her to have the issue as to whether the check was received by her in satisfaction of the amount then owing her by the deceased submitted to the jury. We have examined the check itself, which was returned with the record, and have no doubt the words "in full" are in the handwriting of the deceased and were written by him at the time he signed the check. The receipts signed by her evidence the fact that from 1908 to 1915 frequent settlements were had and, as the $500 was paid after several conferences between claimant and the deceased, we are persuaded that she accepted it in full of all her then claims

against Mr. Charles, and that the trial court was fully justified in so instructing the jury.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.